CHATTANOOGA, ROME & COLUMBUS R. R. CO. v. PALMER.

1. Where in substance the declaration sets forth a tort, though the form be in part appropriate to an action on contract, the declaration may be upheld as one complaining of the tort; and an account annexed thereto and referred to in the body of the declaration may be consulted to supply a requisite date which is not otherwise fully alleged or disclosed.

2. Where, during the progress of a legal argument by counsel to the court, the court, to draw out the views of counsel, remarks that he does not see the use of certain evidence, such remark does not invade the province of the jury, though it may be made in their hearing.

3. Observations of the court to counsel in the hearing of the jury during the progress of the trial, though open to criticism, if of but slight importance and only possibly, not probably, injurious, will not work a new trial.

4. Though the charge was verbally inaccurate in specifying the three elements of defence, the inaccuracy was harmless in view of the evidence.

5. The plaintiff having, as he had a right to do, built his pasture fence and located the gate for his cattle on his own land, the
v 89-11

maintaining and use of this fence and gate did not constitute contributory negligence on his part, and the court committed no error in failing to instruct the jury on contributory negligence. The question of unavoidable accident was not in the case, there being no evidence explaining the details and attendant circumstances of the tort.

6. The verdict is intelligible and sufficiently certain, but the finding of interest, as such, is contrary to law, and direction is given that the interest be remitted and written off.    *Judgment affirmed.*

March 31, 1892.    Argued at the last term.

Actions. Torts. Trials. Charge of court. Negligence. Verdict. Before Judge MEYERHARDT. City court of Floyd county. December term, 1890.

The declaration alleged that defendant was indebted to Palmer $129, besides interest, for that the defendant, its agents and employees, " by the reckless negligence in running its trains in said county and through the lands of petitioner in the month of October, 1889, did by its said agents and employees, and through the instrumentality of its said trains, kill and destroy five head of cattle, the property of petitioner, of the said value of $129 as per itemized account a copy of which is hereto attached as a part hereof and which said defendant refuses to pay, notwithstanding often asked to do so by petitioner." The defendant demurred upon the ground that the declaration did not set forth the cause of action in this : it was so ambiguous that it was impossible to determine whether it was an action *ex delicto* or *ex contractu ;* as an action *ex contractu* it alleged no promise to pay ; it was defective as an action of tort, because it did not allege the time when the cattle were killed, and as it was proceeding against defendant solely on the ground of presumption of law against defendant, time was essential, that defendant might produce its agents who ran over defendant's road at that time. The demurrer was overruled, and the defendant excepted.

The evidence for plaintiff was to the following effect: Defendant's railroad track runs through plaintiff's land.

Plaintiff uses the field through which it runs for pasture for his cattle. The five cattle sued for are worth the price set out in the declaration. They were killed at various times during the last of September, 1889, beginning about the 22d, at intervals of two or three days, all being killed within a period of three weeks running into the first of October. All of them were found near the track, either crippled or killed, at various times in the morning, and they must have been killed during the night before. Plaintiff has been using this field as a pasture for cattle for a number of years. He put a fence about thirty or forty feet north of the railroad, separating other portions of his land from this pasture. He never lost any cattle by the railroad before he erected this fence. The reason he put the fence above the track was, because the cattle kept getting into his crops in the field north of the railroad on account of the bad condition of the stock-gaps. These outside cattle do not get into the pasture now, because during 1889, and for a year, the stock-gaps have been kept up very well. The point where the cattle in question were all killed was on the railroad which here runs along an embankment between a stock-gap and a trestle, and almost opposite the gate is plaintiff's fence where the cattle came into the pasture and from which they came out on returning home. In getting into and out of the pasture the cattle have to pass over the railroad. Plaintiff has had other cattle killed by the railroad since, and did have up to the time he took them out of this field. He has two or three other pastures. The cattle would not have got hurt if the fence had been south of the track. It was probably the nearest way through the field to plaintiff's house to let the cattle in and out at the gate mentioned. It would be more inconvenient to go all the way around to let them in below. If the fence had been built south of the road it would not have cut off anything from the

pasture but the right of way of the railroad, which extends thirty feet on each side of the track. If the cattle are on the north side of the track when the train is coming, there is room enough for them to stand and let the train pass, but they are not apt to keep still; their nature leads them to try to get away, and this they could only do by crossing the track. The section-master butchered one of the cows, and plaintiff took one of the hind quarters with the agreement to set off whatever it was worth after it was weighed. It did not appear what this quarter weighed, but plaintiff did not think it weighed as much as ninety pounds. It was not worth ten cents a pound, probably not more than three or four cents. Defendant introduced no evidence, apparently.

The jury found for plaintiff, and defendant's motion for a new trial was overruled. To this also it excepted. The motion contained the following grounds besides those alleging that the verdict was contrary to law, evidence, etc.

The court said to defendant's counsel in the hearing of the jury, "I do not see what use there is in proving that the building of the fence has increased the dangers of the locality,"—defendant's attorney having just asked the plaintiff whether the building of his fence at that particular point had not increased the danger to cattle in that pasture. The court's remark was alleged to be error, "because that was a question of negligence on plaintiff's part and for the jury, and was an expression of opinion on the evidence, and moreover was erroneous as a legal proposition." The court certified that this remark of the court was made in the course of a legal argument by defendant's counsel, with a view to draw out the counsel's ideas of the law, and not to express any opinion to the jury.

Defendant's counsel in his opening argument urged the proposition, "that if the killing of these cattle was an unavoidable accident, or resulted from the manner

in which plaintiff had located his fence with reference to the tracks, thereby greatly increasing the natural dangers of this locality, and he could have avoided building his fence just here without any serious inconvenience, then we take the position that the plaintiff cannot recover." The court interrupted counsel to say that he did not agree with those propositions, that it did not make any difference where the fence was located, and the court did not understand that the defendant had any right to object to plaintiff's placing his fence where he chose on his own land. This was alleged to be error because it entirely withdrew from the jury all question of the contributory character of plaintiff's negligence in constructing his fence, and was an expression of opinion on the facts. The court certified that this remark was made, not as a final legal proposition or charge to the jury, but only by way of giving counsel an opportunity to combat the court's idea of the law and convince him to the contrary, if he could.

Defendant's counsel moved to rule out certain testimony to which he had objected, and added, "I want the court to understand that I reserve this point." The court replied, "I understand that you wish to reserve that point for the purpose of taking the case up." It was alleged that this was error "because it was calculated to prejudice the jury and lead them to believe that defendant had despaired of his case."

The court admitted testimony of the tortious killing of the cattle, defendant objecting thereto because plaintiff declared on an open account in an action *ex contractu*, and there was no claim for damages *ex delicto* in the declaration.

The court charged: "When the killing of stock by a railroad is shown, the law puts the burden on the railroad of rebutting the presumption of negligence. This presumption may be rebutted in one of three ways: either by showing that they have exercised all ordinary

and reasonable care and diligence to avoid the injury; or that the injury was done with plaintiff's consent, which of course, is not contended in this case; or that it resulted solely from the negligence of the plaintiff." This charge was alleged to be error, because defendant did contend and the evidence tended to show that the conduct of plaintiff amounted in law to a consent to the injury, and this charge entirely withdrew that question from the jury and was an expression of opinion on the facts; also, because it confined the contributory character of plaintiff's negligence to the single hypothesis of the injury resulting solely from said negligence.

The court failed to charge the law applicable to contributory negligence, and unavoidable accident. This was alleged to be error, because the facts called for such a charge, and it was impossible for the jury to properly consider the case without a knowledge of this law; and because it was one of defendant's contentions to the jury that, so far as it was concerned, this was a case of unavoidable accident and the evidence tended to show it.

The verdict is so vague and indefinite as to be without meaning, it being as follows: "We, the jury, find for the plaintiff $129 with credit of seventy-five pounds of at three and a half cents per lb., with entrust from Oct. 15, 1889." This verdict was read in the presence of the jury as follows: "We, the jury, find for the plaintiff one hundred and twenty-nine dollars, with credit of 75 pounds of beef at three and a half cents per pound, with interest from Oct. 15, 1889."

The verdict is contrary to law in finding interest, the action being one *ex delicto*, and if interest was found at all it should be added into the principal sum of the verdict.

W. W. BROOKES and W. T. TURNBULL, for plaintiff in error.

REECE & DENNY, *contra*.